UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SCOTT KRIEBAUM,           )
                          )
        Plaintiff,        )
                          )
vs.                       )   Case No.: 05CV2392 MLM
                          )
JO ANNE B. BARNHART,      )
COMMISSIONER of the       )
SOCIAL SECURITY ADMINISTRATION )
                          )
        Defendant,        )

## BRIEF IN SUPPORT OF COMPLAINT

This suit involves a claim made for Supplemental Security Income Benefits and Disability Insurance Benefits under sections 216 (I) and 223 of the Social Security Act. This action is a judicial review as provided for by 42 U.S.C. Section 405(g) brought to review the Appeals Council Decision of October 27, 2005 upholding the hearing examiners decision of March 25, 2005 in which Administrative Law Judge Jhane Pappenfus denied the Plaintiff's claim for Social Security and Supplemental Security Income Benefits.

### Statement of Facts and Medical History

Plaintiff is a 46-year-old male born on June 14, 1960. (Tr. 102, 262). Plaintiff has a 12th grade education with approximately one year of community college in connection with his service in the military. Plaintiff was in the U.S. Air Force for fifteen years and ten months employed as a flight simulator technician. (Tr. 256-257). Plaintiff held additional jobs, which include those of a painter, factory worker, roofer, machine operator, and gas station attendant. (Tr. 264-269). Plaintiff's job as a flight simulator technician was his occupation for the majority

of his career. (Tr. 257-269). On October 30, 2003 Plaintiff submitted an application for Disability Insurance and Supplemental Security Income Payments alleging an onset date of disability of September 1, 2001. (Tr. 102-104). At the hearing the Plaintiff amended his alleged date of onset to September 1, 2003. (Tr. 259). Plaintiff's application was initially denied on January 24, 2004, after which, he filed a timely Request For Hearing. The hearing was held on December 22, 2004 in St. Louis County, Missouri, in front of ALJ Jhane Pappenfus. On March 25, 2005 the ALJ issued an unfavorable decision. (Tr. 23). The Plaintiff filed a timely Request For Review of the Administrative Law Judge's Decision with the Appeals Council of the Social Security Administration. On October 27, 2005 the Appeals Council denied his Request For Review. (Tr. 3). The Plaintiff has exhausted all administrative remedies and the decision of the Administrative Law Judge in this case stands as the final decision of the Commissioner of the Social Security Administration.

The Plaintiff has not engaged in any significant gainful activity since his onset date of 2003. The Plaintiff alleges disability due to right lower extremity limitations and right lower extremity pain. (Tr. 260). In January 2002, the Plaintiff fell from a ladder, approximately 6-8 feet, and landed on his right heel. (Tr. 233, 272). He suffered a right calcaneus fracture. A calcaneus fracture is defined as "a fracture of the main mass of the calcaneus or the heel bone, usually as a result of falling upon the heel bone from a height. It is marked by pain in the region of the heel, swelling, tenderness, inability to bear weight, a flattening of the long arch of the foot, limitation of the ability to turn the foot in (inversion) and out (eversion). SCHMIDT'S ATTORNEYS' DICTIONARY OF MEDICINE (SADM) pg. C-7, (15th ed. 1980) Medical records in evidence show that the Plaintiff received treatment from a variety of sources; specifically Missouri Bone and Joint Center, (Tr. 204-206), and John Cochran Veterans Hospital, (Tr. 175-186, 209-213). The majority of the Plaintiff's medical care was provided by Patients First Health Care through Dr. Dean Lusardi and Dr. David Chalk. (Tr. 165-169, 214-216, 235, 240, 248-249). Plaintiff underwent three surgeries. The first was an open reduction internal fixation of the right calcaneus fracture preformed by Dr. Lusardi on 02/12/02. This included the placement of a plate and nine

screws (two through the lateral fragment, three in the posterior fragment, two in the central fragment and two in the anterior fragment) into the right foot. (Tr. 233-234). Plaintiff underwent a second surgery on 04/12/04 entitled "removal of hardware right calcaneus with right subtalar arthrodesis and Allograft bone grafting," performed by Dr. Chalk. (Tr. 222-223). Arthrodesis is defined as, "the surgical procedure of making a joint immovable by causing the surfaces of the bone to fuse or grow together." SADM, pg. A-300. Plaintiff underwent a third surgery by Dr. Chalk on 03/04/05 entitled "removal of screws of the right foot and reinsertion of two compression screws of the right foot." (Tr. 238-239). In addition to the medical care and the operative treatment, the Plaintiff underwent a course of physical therapy from May 2002 through June 28, 2002. This consisted of sixteen visits. (Tr. 187-203, 207-208).

The ALJ concluded that the Plaintiff does not suffer from an impairment or combination of impairments as considered sufficient to meet a Social Security Listing of Impairments contained within 20 C.F.R., 404 (P), App. 1, Part A. (Tr. 22). The ALJ concluded that the Plaintiff had the RFC to perform a significant range of light and sedentary exertional work. The ALJ further concluded that the Plaintiff's testimony regarding his disability, his pain, and his limitations was not credible. (Tr. 22). The ALJ concluded that the Plaintiff was not disabled. (Tr. 23). Plaintiff has specific physical problems referable to his right foot and ankle. He was taking prescription medication including Darvocet and Vicodin for his right foot condition through June 2005. (Tr. 248). Darvocet is a narcotic (opiod) and is prescribed in order to "relieve mild to moderate pain". Vicodin is a narcotic (opiod) and is prescribed, "to relieve moderate to severe pain when nonprescription pain relievers prove inadequate." PRESCRIPTION & OVER THE COUNTER DRUGS/ READER'S DIGEST (POCD) pgs. 398, 636 (1998). The record reflects that the Claimant suffered a fall from a ladder and followed up with treatment on a somewhat regular basis with Drs. Lusardi and Chalk. Of note are radiological examinations of his right lower extremity dated 01/31/02 that revealed a comminuted calcaneus fracture with a 7 to 8 millimeter displacement. (Tr. 230); as well as a CT scan of 12/07/04 which reveals a loss of joint space, increased sclerosis and non-union of the right ankle. (Tr. 237). Of note are the three above

3

referenced surgical procedures that the Plaintiff underwent over a three-year period of time, beginning in February 2002 and continuing until March 2005. In addition to the treatment records mentioned above, the treating doctor noted in a memo dated June 6, 2005, that the patient has been unable to maintain employment and that he believes, Mr. Kriebaum *will* (emphasis added) be able to return to some type of work. (Tr. 248).

### Testimony

Plaintiff was 44 years old at the time of the hearing on December 22, 2004. (Tr. 262). Plaintiff testified that he is currently divorced living with his brother. He is the father of three children. (Tr. 255). Plaintiff graduated high school in 1978 and went straight into the Air Force. (Tr. 272). His testimony was that the physical requirements of his job in the Air Force required him to stand for 75% of the day and lift up to 300 pounds. (Tr. 270-271). Subsequent to the time that he spent in the Air Force the Plaintiff worked as a machine operator from 1995 to 1997. The physical requirements of that job required him to be on his feet 95% of the time and required him to stoop. (Tr. 267-268). Subsequent to that job, the Plaintiff was employed as a roofer, which required him to be on his feet constantly. (Tr. 266-267). The Plaintiff left that job in 2002 because it was getting too hard to do at his age. (Tr. 267).

Plaintiff suffered injury to his right foot in January 2002, and after an initial course of treatment, which included surgery, he was able to return to work as a factory worker for the Rawlings Corporation. (Tr. 263). Physically, that job required him to lift and stoop and constantly walk and be on his feet. The Plaintiff testified that he was on his feet 95% of the day and that he was eventually terminated because he was frequently absent due to the necessary treatment to the right foot. (Tr. 264). Following his termination from the job at the Rawlings Corporation, the Plaintiff underwent two more surgeries with continuing medical care through at least June of 2005. (Tr. 248). As of June of 2005 he had not returned to any sort of substantial gainful employment. The Plaintiff testified that he uses a cane that was not medically prescribed, however, he uses it wherever he goes. (Tr. 277). He testified that he can walk a

4

block or so before he needs to sit down and he can stand for approximately 15 minutes before he needs to take a break. (Tr. 277).

The Plaintiff testified that he needs to be in a reclining position with his foot elevated as much as possible in order to tolerate the pain. (Tr. 278, 280). In a non-reclining position the Plaintiff believes that he can sit approximately an hour and a half before symptomotology of throbbing and severe pain is present in the right lower extremity. (Tr. 279). The Plaintiff indicated that he plans to enter back into the workforce as soon as possible. Due to the problems that he has with his right lower extremity at the time of the hearing, the Plaintiff testified that in addition to not being able to return to any of his past work, he did not believe he was able to engage in any sort of gainful employment. (Tr. 282-283). The Plaintiff testified that he did not do any cooking, housekeeping, laundry, shopping or lawn work, but rather his mother, or someone else did. He attributed the inability to do that type of work to the problems with his foot. (Tr. 279-280). He testified that the longest he can go without having to rest or be in a reclined position is 90 minutes. (Tr. 281). The pain effects his concentration. (Tr. 281)

The ALJ did not call a vocational expert to testify.

## Administrative Law Judge's Opinion

On March 25, 2005, Administrative Law Judge Jhane Pappenfus (herein after referred to as ALJ) issued a decision that the Plaintiff is not entitled to a period of Disability, Supplemental Security Income Benefits, or Disability Insurance under section 216(I) and 223, respectively of the Social Security Act. (Tr. 10-23).

## Appeals Council Decision

The Appeals Council, on October 27, 2005, issued a decision finding no reason to review the ALJ's decision. (Tr. 3-5).

## Statement of the Issue

The issue before the Court is whether there is substantial evidence to support the decision of the ALJ as affirmed by the Appeals Council. 42 U.S.C. Section 405(g) provides that judicial review is limited to determination of that issue. The Court is required to review the administrative record as a whole and to consider the credibility findings made by the ALJ, the Plaintiff's vocational factors, the medical evidence from treating and consulting physicians, the Plaintiff's subjective complaints relating to exertional and non exertional impairments, any corroboration by third parties of the Plaintiff's impairments, and the testimony of vocational experts when required which is based upon a proper hypothetical questions and sets forth the Plaintiff's true impairments. *Cruse v. Bowen, 867 F. 2d 1183, 1184-1185 (8th Circuit 1989). Brand v. Secretary of Department of Health Education and Welfare, 623 F. 2d, 523, 527 (8th Circuit 1980).*

This court is required to review the evidence itself. *Burress v. Apfel, 141 F. 3d 875, 878 (8th Circuit 1998).* While this claim should not be considered *de novo*, the Court must carefully analyze the record in its entirety and review the application of both facts and law in the Commissioners decision. *Wilcutts v. Apfel, 143 F. 3d 1134, 1136 (8th Circuit 1998).*

## Argument

It is the position of the Plaintiff that the decision of the Commissioner of the Social Security Administration is not supported by substantial evidence in that the ALJ committed reversible error in the following respects;

(A) The ALJ concluded that the Plaintiff retains the Residual Functional Capacity to perform a significant range of light exertional work.

(B) The ALJ did not take the testimony of a licensed vocational expert through posing an appropriate hypothetical that needs to include all of the Plaintiff's true complaints and limitations.

(C) The ALJ made an unfair and inappropriate credibility assessment.

A.          The ALJ's conclusion that the Plaintiff retains the residual functional capacity to perform a significant range of light exertional work is not supported by the evidence.

The definition of light exertional work would require the Plaintiff to be able to either stand or walk for six hours out of an eight-hour day. (Tr. 20). There is no indication from any treating doctor that the Plaintiff has any ability to stand for that period of time. In fact, the medical records of John Cochran Veterans Hospital dated September 30, 2003 indicate that the Plaintiff has aggravated pain upon stepping on uneven surfaces or walking on concrete. (Tr. 183). Additionally the medical records of John Cochran Veterans Hospital of 09/30/03 note that the Plaintiff should keep weight off of the foot and elevate the foot at least on a temporary basis. (Tr.177). The fact remains that as of the date of the Plaintiff's last surgery, which was subsequent to the date of the hearing, the Plaintiff was still suffering from a nonunion of the foot. (Tr. 238-239) One can assume that his ability to put weight on that foot continued to be affected at least through the date of that surgery. It, therefore, not only defies the record, but it defies logic to conclude that a person suffering from this type of disability to a weight bearing joint would be able to stand and/or walk for six hours out of an eight hour day.

Plaintiff submitted evidence from the treating doctor, Dr. David Chalk, dated June 6, 2005. (Tr. 248). This evidence was submitted subsequent to the ALJ's decision and was only considered by the Appeals Council. Evidence submitted to the Appeals Council, but not to the

ALJ is part of the Administrative Record. *Gartman v. Apfel, 220 F.3d 918, 922 (8th Cir. 2000).* In that record, Dr. Chalk opined that the patient has been unable to maintain employment and has had heel pain over the last three and a half years that has kept him out of work since that time. Dr. Chalk indicated that he believes that Mr. Kriebaum will be able to return to some type of work. (Tr. 248).

One would infer from Dr. Chalk that his use of the words "will be able" is indicative of the fact that that as of June 6, 2005 the Plaintiff was not able to return to work and only subsequent to June 6, 2005 could he possibly be able to return to work. Additionally, Dr. Chalk indicates in that record that he believes that the Plaintiff will be unable to walk on irregular surfaces, roofs, or slanted surfaces. He cannot work on concrete or on irregular foreign. He cannot repetitively climb ladders; he cannot work on slanted surfaces or other heavily pitched areas. (Tr. 248). Additionally, as of 03/17/05 Dr. Chalk had indicated that he could only be partial weight bearing. (Tr. 249). That entry is made in March of 2005, some seventeen months after the alleged date of onset of disability. It is crucial for the ALJ to describe how a person who is only partially weight bearing can work in a capacity that requires him to stand or walk for 6 hours out of an 8-hour day, and she did not. Given the opinion of the treating doctor, it is clear that the ALJ's contention that the Plaintiff retains the residual functional capacity to perform a wide range of light exertional work is not based upon medical evidence, and is therefore indicative of error. Residual Functional Capacity is a medical question. *Nevland v. Apfel 204 F.3d 853, 858 (8th Cir.2000); Singh v. Apfel, 222 F. 3d 448, 451 (8th Cir. 2000).*

On January 12, 2004, the Plaintiff's case was reviewed by Lisa Masek. (Tr. 120-127). Ms. Masek is identified in the record as a senior counselor. (Tr. 127). While Ms. Masek is not a medical doctor or a medical consultant, she is a layperson with an expertise in the Social Security Rules. She indicated that the Plaintiff only maintains the functional capacity to engage in sedentary activity. (Tr. 125). It is further noteworthy that the counselor concluded that the Plaintiff is limited from extending walking and standing due to a severe right calcaneus fracture.

(Tr. 125). This is at odds with the conclusion of the ALJ that the Plaintiff can stand and/or walk for 6 out of 8 hours in a day.

At no time did the ALJ consider the opinions of this senior counselor, in spite of the fact that the Administration specifically asked this counselor to render conclusions based upon "all evidence in the file". (Tr. 120). At the very least, Ms. Masek's conclusions should be considered corroboration by a third party of the Plaintiff's impairments, and should be considered in the ALJ's decision, as is noted in <u>Cruse v. Bowen.</u>

The ALJ noted that the Claimant retains an ability to perform a wide range of light exertional work, which includes maximum lifting of 20 lbs; frequent lifting of 10 lbs.; and, standing or walking for six out of eight hours. She is of the opinion that this conclusion is largely consistent with the opinions of the Disability Determination Section reports and the Orthopedic Evaluation from Dr. Tippett. (Tr. 20).

Careful review of the entire record reveals that the only Disability Determination Reports from the Administration are the above referenced report of Ms. Lisa Masek, (Tr. 120-127), and the Disability Report-Field Office- Form SSA-3367 performed on October 30, 2003 by a K. Quinn. (Tr. 135-138). This was a face-to-face meeting. (Tr. 136). It is noted in that report that the interviewer indicated that the Claimant had difficultly walking and that he walked with a pronounced limp. (Tr. 137). Once again, while the opinions of Ms. Masek and K. Quinn are not those of a medical doctor, they should serve as corroboration by a third party. Furthermore, nothing contained within those reports indicates that the Plaintiff retains the ability to stand or walk for six hours out of an eight-hour day.

The ALJ noted that her determination with regard to the Plaintiff's Residual Functional Capacity was consistent with the orthopedic evaluation of Dr. Tippett. (Tr. 20). Review of Dr. Tippett's report notes that the examination was preformed on 11/25/03. (Tr. 170-172). Dr.

Tippett's evaluation took place some **five months prior** to the Plaintiff's right foot arthrodesis and bone grafting surgery, (Tr. 222-223) and **fifteen months prior** to Plaintiff's insertion of compression screws into the right foot. (Tr. 238-239). It is difficult to understand how the ALJ is able to rely on a consultive examination that took place prior to the bulk of the allegedly disabled person's treatment. Furthermore, nothing contained within Dr. Tippett's report is indicative of the fact that the Plaintiff retains the ability to stand for six out of eight hours out of the course of the day. It therefore appears as if the ALJ's determination of the Plaintiff's Residual Functional Capacity not only finds no medical support, but it finds no support within the testimony, nor does it find any third party support. Some medical evidence must support the determination of Residual Functional Capacity and the ALJ should obtain medical evidence that addresses the Plaintiff's ability to function in the workplace. *Hutsell v. Apfel, 259 F. 3d 707 (8th Circuit 2000)* quoting *Lauer v. Apfel, 245 F. 3d 700, 706 (8th Circuit 2001)*. The ALJ's determination of the Plaintiff's RFC must find support in the medical evidence. *Fredrickson v. Barnhart, 359 F.3d 972, 976 (8th Cir. 2004)* citing *Krogmeier v. Barnhart 294 F.3d 1019, 1023 (8th Circuit 2002)*.

Based upon the above it is clear that no evidence exists which supports the fact that the Plaintiff retains the functional capacity to engage in a wide range of light activities. In fact the medical evidence (Drs. Chalk, Lusardi and Tippett), the third party evidence (L. Masek and K.Quinn) and the testimony of the Plaintiff himself suggest that Mr. Kriebaum does **not** have the Residual Functional Capacity for light activity.

B. The ALJ did not take the testimony of a Licensed Vocational Expert, and did not pose an appropriate hypothetical to a vocational expert that includes all of the Plaintiff's true complaints and limitations.

The testimony of a vocational expert is required when a Plaintiff has satisfied his initial burden or her initial burden of showing that he or she is incapable of performing her past relevant work. *Hunt v. Massanari 250 F.3d 622, 625 (8th Cir. 2001)*. The ALJ concluded that the Plaintiff cannot perform his past field of work and therefore the burden of proof shifts to the Defendant to show that there is other work in the national economy that the Plaintiff can perform. (Tr. 21).

The Plaintiff testified that he has pain in his foot, that he can't stand for any length of time, and even sitting hurts because he has to elevate his foot. (Tr. 260). He further indicated that as of the date of the hearing, the treatment that he has had has not cured the pain. (Tr. 274). He qualifies the pain as a 6 out of 10 and occasionally goes to a 7 or 8 out of 10. This happens approximately once a week. He indicates that since his injury he has not taken one step where he doesn't feel it hurting and he doesn't have a pain free day. (Tr. 276). The pain effects his concentration. (Tr. 282). The ALJ indicated that she relied on the Medical-Vocational Guidelines as a framework in the decision making process. The conclusion that she reached was based upon those guidelines and at no time did the ALJ call for, or consider, testimony from a licensed vocational expert. When the Plaintiff has a non-exertional impairment such as pain, the ALJ may not exclusively rely on the vocational grids to determine disability, but must also consider the testimony of a vocational expert. 20 CFR, Part 404, Subpart P, Appendix 2, Sec. 200.00(e) and *Hailey v. Massanari, 258 F.3d 742 (8th. Cir. 2001)*. The only way that the ALJ could have solely relied on the Medical-Vocational Guidelines is if she finds that the Plaintiff did not suffer from the non-exertional impairment of pain. The ALJ concluded that the Plaintiff's medical records fail to establish the significant effect his pain should have on his functional abilities. (Tr. 19). This finding is inconsistent with the weight of the evidence. The Plaintiff's testimony was that his major complaint is pain in his right foot. (Tr. 24-25). He further indicates that the pain requires him to take narcotic medication such as Vicodin, and at times requires him to wear a walking boot when it gets "real bad". (Tr. 25). In addition to the Plaintiff's testimony, the medical records submitted into evidence substantiate constant, consistent, and ongoing

11

complaints of pain, beginning prior to the date of onset of his disability and continuing until at least June 6, 2005. The John Cochran Veteran Hospital record of 9/30/03 indicates that the Plaintiff "presents to triage for c/o pain in right foot x3 days." (Tr. 175). Dr. Chalk, (the treating surgeon) in his record of 02/17/04 indicates "he has had persistent pain....he has no improvement with oral anti-inflammatory of significance." (Tr. 216). Dr. Chalk's record of 12/07/04 indicates "his heel pain and subtalar pain over the lateral side of his foot persists". (Tr. 214). The record of 02/07/05 indicates that the Plaintiff is still having pain in his right foot. Pain is noted with the rotation of the foot". (Tr. 240). In his letter of June 6, 2005, Dr. David Chalk indicates that "he has had heel pain over the last three and half years that has kept him out of work since that time". (Tr. 248). At no time did any treating doctor question the Plaintiffs credibility. The complaints of pain are in spite of twelve prescriptions for pain medication, which include, Percoset, Vicodin, and Darvocet. These prescriptions were given between the date of the onset of his disability and the last date of medical care which was 04/19/05 (Tr. 215, 216, 240, 249). Percocet is a narcotic (opioid) and is prescribed "to relieve moderate to severe pain when non-prescription pain relievers prove inadequate." POCD p. 574.

It is clear from the Plaintiff's testimony as well as the medical records that the Plaintiff has had, and continues to have non-exertional impairments. Therefore, since the Plaintiff has met his burden in showing that he is unable to work in any of his previous employments **and** the Plaintiff has testified and proven through the medical records that he has the non-exertional impairment of pain, it becomes necessary for the ALJ to take testimony from a Licensed Vocational Expert in order to reach a conclusion vis-à-vis the Plaintiffs disability. The fact that she did not take that testimony is reversible error.

      C.     The ALJ made an unfair and inappropriate credibility assessment.

The ALJ concluded that the Plaintiff's allegations regarding his limitations are not credible. (Tr. 22). The ALJ indicates that the Plaintiff's credibility is lacking due to the fact that

there are records that indicate that he regularly rides his bike long distances and that he is capable of walking five miles, going arrowhead hunting and working until September 2003. (Tr. 19). What the ALJ failed to note is that the medical records that make those indications are contained within the Pro Rehab records from May 2002 through August 2002. (Tr. 22-23, 27-43). It is of note, that those entries, with regard to walking, riding a bike, and going hunting were made on dates **prior** to the date of onset of disability that the Plaintiff is alleging ,and therefore should have no bearing whatsoever on the Plaintiff's credibility with regard to his contention that he has been unable to engage in any sort of employment **since** the date of onset of his disability.

The ALJ indicated that the Plaintiff's medical history, medication records, other evidence of record, including the information, observations, and statements made by his physicians do not substantiate the nature, intensity and persistence of his alleged pain or pains that would preclude all types of work. (Tr. 19). The ALJ's above contention is clearly indicative of an inaccurate review of the entirety of the medical evidence contained within the record. The medical records clearly reflect that the Plaintiff had suffered a very serious injury to his right lower extremity. By and through the ALJ's own determination, she has concluded that the Plaintiff's condition is a severe condition that significantly limits the Plaintiff's ability to do significant work activity and precludes him from returning to any of his past employment. (Tr. 22). The records reveal that the Plaintiff has undergone three surgeries to treat the disability in his right lower extremity. Most recently, the Plaintiff has undergone a screw removal and a reinsertion to correct a non-union that has been present in the right lower extremity for more than three years. (Tr. 238). Additionally, the medical records indicate that the treating doctors have recommended a bone stimulator to help with his treatment. (Tr. 249). Clearly, the Plaintiff's persistent attempts to find relief of his pain and his willingness to try any treatment prescribed, as well as his regular contact with a doctor is relevant to the credibility of his complaints. 20 C.F.R. 404.1529 and 416.929, Social Security Ruling 96-7 P and, *Pulaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984)*. The ALJ's contention that the medical records do not substantiate the Plaintiff's

13

complaints is simply without merit. When one carefully reviews the medical records, both prior to and subsequent to the alleged date of onset of September 2003, it is unquestionable that the Plaintiff has a painful, disabling and limiting condition. To conclude otherwise, one would have to disregard more than three years of treatment which required three surgeries, one of which was a subtalar arthrodesis, (Tr. 222), one would have to ignore the prescription of numerous narcotic pain medications, as well as the indication for the necessity of a bone stimulator for correction of the three year old nonunion. It is noted that a non-union type injury that is so severe that it is the basis of a Social Security Listing of Impairment (Section 1.06).

The ALJ indicates that the record also shows that the Plaintiff missed or canceled both physical therapy and physician's appointments. (Tr. 18). Careful review of the record shows that since the alleged date of the onset disability, which was more than a year and a half prior to the date of the hearing, the Plaintiff has missed one doctor's appointment and two physical therapy appointments. By no means and under no reasonable interpretation can that constitute a reason for concluding that the Plaintiff is not credible.

The ALJ further indicates that the record reveals that the treatment has been generally successful in controlling his impairment. (Tr. 18). The ALJ's interpretation of what is considered a generally successful treatment is unreasonable. The fact that the Plaintiff had to undergo three surgeries to correct a single injury is, in and of itself, indicative that the treatment, at least through the date of the last surgery, has not been successful. Furthermore, the surgeon's post-operative diagnosis in the most recent surgery of March 2005 is that of a nonunion of the subtalar joint of the right foot. Clearly, at least up until March 2005, the treatment cannot be considered successful. Therefore, based upon the above, it is very difficult to understand how the ALJ can conclude that the Plaintiff's treatment has been generally successful in controlling his impairments. At the very least, it is not until June 2005 when Dr. Chalk indicated that the Plaintiff "will be able to return to some type of work" that one can even begin to consider that the treatment has been generally successful in controlling his impairment. (Tr. 248).

Furthermore, the medical records substantiate that subsequent to the date of onset of disability, the treating physician made no less than thirteen prescriptions for narcotic pain medications such as Vicodin, Darvocet, and Percoset. (Tr. 215, 216, 240, 249).

The ALJ contends that the Plaintiff's failure to at least attempt to stop smoking suggests a less than wholehearted effort to fully recover from his impairment and that this diminishes his credibility. (Tr. 19). The ALJ's indication that the Plaintiff's inability to attempt to stop smoking affects this credibility is complete speculation and wholly unreasonable. The record indicates that the Plaintiff has been a persistent smoker for 25+ years, and it has never affected his ability to engage in substantial gainful employment. (Tr. 227). In response to that allegation, it is notable that there is evidence that immediately subsequent to the alleged date of onset of disability the Plaintiff did acknowledge that he was cutting down on his smoking. (Tr. 179). It is further notable that the Plaintiff's consistent earnings record dates back more than twenty years. (Tr. 77). The Plaintiff indicated that throughout his life, when he was able to work, he worked. (Tr. 283). Any reduction in his earnings was only due to the illness of his child. (Tr. 269). An ALJ must explicitly discredit a Plaintiff and give reasons, and an ALJ must use the factors set out in *Polaski v. Heckler Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)*. The ALJ's contention that continued smoking suggests a less than wholehearted effort to fully recover from his impairments is far from a valid reason to discredit the Plaintiff. When one considers his long work history, the fact that he has enrolled in a vocational rehabilitation program, (Tr. 283) his full intention to return to work, (Tr. 282) and the fact that he has undergone three surgeries, it is indication enough of his willingness to fully recover and return to the open labor market. Plaintiff testified that he "can't wait until he can go back to work" (Tr. 282)

The ALJ's did not make a fair and appropriate credibility assessment. Her conclusions are based upon a number of different interpretations, which include his inability to stop smoking, as well as the fact that he did apply for unemployment benefits, and tried to present himself as ready, willing, and able to work. While the Plaintiff did apply for unemployment benefits for

one quarter following his alleged date of onset of disability, there is no indication that the Plaintiff did not feel he would at least attempt a return to work. What further adds to the Plaintiff's credibility is that subsequent to his injury and the first year of his treatment he returned to work as a factory worker for the Rawlings Corporation. (Tr. 139-140). In fact, he was terminated for poor attendance due to the numerous missed days because of his right lower extremity impairment. (Tr. 152). Not only did he make an attempt to return to work subsequent to his injury, but throughout his life he always maintained a relatively consistent work record. (Tr. 77). A Plaintiff with a good work record is entitled to substantial credibility when claiming she is unable to work. *Nunn v. Heckler 732 F.2d 645, 648 (8th Cir. 1984)*. A consistent work record supports the credibility of the disability complaint. *Hutsell v. Massanari, 259 F.3d 707, 713 (8th Cir. 2001)*. When one considers the Plaintiff's work record, the fact that he returned to work subsequent to his injury, the fact that he has enrolled in a vocational rehabilitation program, and the fact that he himself indicates that his goal is to return to the labor market, it is beyond the scope of reason to conclude that this Plaintiff is not credible. The ALJ, in this matter, utilizes facts such as his non-attempts to quit smoking and his actions with regard to riding a bike and walking *prior to* the date of onset of his disability in a feeble attempt to try and discredit this Plaintiff. In discussing these issues, she essentially ignores the objective findings contained within the record. It is very curious that at no point in her eleven page decision did the ALJ ever even make mention of the surgeon's post operative diagnosis of a three year old non-union, a diagnosis that is so serious that, as mentioned above, it is the basis of a Social Security Listing of Impairment.

Clearly, the ALJ erred in her conclusion that the Plaintiff is not credible. Her findings with regard to credibility are not supported by the record and are indicative of reversible error.

### Conclusion

Once this Court has considered the fact that the ALJ had no basis whatsoever for her finding with regard to the Residual Functional Capacity, and that the ALJ did not take

appropriate testimony from a VE, and that the ALJ made an improper credibility assessment, it is clear that this decision should be reversed. There is virtually no substantial evidence contained within the record that supports the ALJ's decision. Clearly, this judge committed reversible error. There is ample evidence to grant immediate benefits without remanding to the ALJ. *Stuart v. Secretary of Health and Human Services, 957 F 2d 581-587 (8th Cir. 1991)*.

WHEREFORE, Plaintiff prays that the Court reverse the Commissioner's decision and order an Award of benefits beginning on September 1, 2003, or in the alternative to reverse and remand it for further proceedings consistent with 8th Circuit Law.

Respectfully Submitted,

Daniel Z. Lefton    #106351
Attorney for Plaintiff
Law Offices of Jerome L.T. Lefton
1015 Locust Street, Suite 808
St. Louis, MO 63101-1323
(314) 231-1166

I, Daniel Z. Lefton, hereby certify that a true and accurate copy of this document was filed electronically on this 30 day of June 2006, in the United States District Court located at 111 South 10th Street, St. Louis, MO 63102. And by and through this electronic filing system the foregoing was served upon the following:

Ms. Jane Rund
Assistant United States Attorney
111 South 10th Street, Suite 20.33
St. Louis, MO 63102

The Honorable Alberto Gonzales
U.S. Attorney General
10th and Constitution Ave.
Washington, D.C. 2053